**Arthur Johnson, Plaintiff-Appellant, v. Daniel Jackson and Melvin Smith, Defendants-Appellees.**

**Gen. No. 48,884.**

First District, Second Division.
September 17, 1963.

 

Holt and Holt, of Chicago (Leo E. Holt, of counsel), for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Robert J. Collins, Assistant Corporation Counsel, of counsel), for appellees.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a verdict and judgment entered thereon in the Superior Court of Cook County on January 11, 1962, finding defendants, Daniel Jackson and Melvin Smith, police officers, not guilty of false arrest and assault and battery.

Plaintiff-appellant alleges three assignments of error: (1) that the court erred in admitting the statement of one Osbie Allison; (2) that the court erred in refusing to direct a verdict in favor of the plaintiff; and (3) that the court erred in refusing to give certain instructions requested by the plaintiff.

The defendants, Daniel Jackson and Melvin Smith, along with Officers Lewis DeNye and John Walker, constituted a "plain clothes" team whose regular duties were to clear so-called "bottle gangs" off street corners in front of liquor stores on Friday and Saturday nights. On September 20, 1952 at about 9:00 p.m. these officers arrived at the Larabee Cut Rate Liquor Store at the corner of Larabee and Division for the purpose of clearing the street of a "bottle gang."

The defendants and their witnesses testified that the police officers entered the liquor store and that the defendant, Melvin Smith, showed his badge to the plaintiff, Arthur Johnson, and to Osbie Allison and identified himself as a police officer; that Melvin Smith then asked why they were using loud and profane language in the presence of ladies; and that the plaintiff made no response to these questions.

Officer Smith then proceeded to search Osbie Allison who did not resist. When he started to search the plaintiff he resisted and pushed away Officer Smith's hand. Officer Smith stepped back and tripped over a peanut machine and fell to the floor. The plaintiff continued to come forward but was restrained by Officer Jackson who had come to the assistance of Officer Smith. At the time of this occurrence from fifteen to thirty people were congregated in the liquor store and this fact had some bearing on how well all of the witnesses saw the incident.

Thereafter, the plaintiff along with Osbie Allison and a few other people were taken out of the liquor store, placed in a squad car or "wagon" and taken to the station. An arrest slip was signed by Officer Jackson and a complaint was filed by Officer Smith for resisting arrest and for disturbing the peace. The plaintiff spent the night in jail and on the morning of September 21, he was transferred to the Bridewell Hospital. There was testimony and evidence to show that the reason for plaintiff's transfer to the hospital was a fractured jaw. All the police officers testified that the first they knew of any injury to plaintiff was on September 21 when notices were put in their call boxes.

■ The primary factual controversy present in the lower court centered around how the plaintiff, Arthur Johnson, sustained his double-fractured jaw. Evidence was introduced showing that Arthur Johnson had suf-

fered from epilepsy in a mild form for fourteen to sixteen years prior to the time of his injury. During this time he had held down a regular job. Subsequent to his fractured jaw his epilepsy seizures became more frequent and prolonged and evidence was offered tending to show that he would never hold a full time job again. All witnesses agreed that Arthur Johnson did not drink and was not in the liquor store for the purpose of drinking or securing liquor.

It was the contention of plaintiff that after he pushed Officer Smith away and to the floor he was hit across the face with a hard object which broke his jaw. The four police officers denied striking plaintiff at all. The statement of Osbie Allison tended to corroborate this. On the other hand, the testimony of plaintiff's witnesses, Willie Stevens, Willie Morris, Odie Smith and Carter Johnson bore out the position of Arthur Johnson that he had been hit by some hard object in the liquor store.

The defendants speculated that the plaintiff had been injured while in the jail cell by a fall brought about by one of his epileptic seizures. They alleged that the plaintiffs had made no effort to secure impartial witnesses who would have shown that there was no evidence of a fractured jaw at the time Arthur Johnson was jailed. The testimony of the four officers remained consistent throughout questioning. The jury returned verdicts under both counts for the defendants.

The statement of Osbie Allison was taken the evening of September 21st out of the presence of and without notice to the plaintiff, Arthur Johnson, by the arresting officers at the police station. If the statement was offered to prove Osbie Allison's version of the factual occurrences of the day before it was clearly hearsay and as such inadmissible. Jendresak v. Metropolitan Life Ins. Co., 330 Ill App 157, 70 NE2d 863; 10 ALR 2d 1035–1050; McCormick On Evidence, § 228, § 231,

254

pp 463, 482–483 (1954), 5 Wigmore On Evidence § 1373, pp 53–54 (3rd Ed 1940). Plaintiff's counsel full well knowing the possible impact of that statement made only a general objection which was overruled by the lower court. This had the effect of allowing the statement to stand for whichever proposition the jury chose to attribute to it.

"It is well settled that an objection, to be good, must point out the specific ground of the objection, and that if it does not do so, no error is committed in overruling it." 53 Am Jur, Trial, § 137, p 121; 88 CJS Trial, § 125, p 254. McCormick in his treatise on evidence states:

> "The precept constantly urged in the opinions is that objections must be accompanied by a reasonably definite statement of the grounds. The purposes of the requirement are that the judge may understand the question raised and that the adversary may have an opportunity to remedy the defect, if possible." McCormick On Evidence, § 52, p 117 (1954).

See also DeMarco v. McGill, 402 Ill 46, 55, 8 NE2d 313; People v. McCurrie, 337 Ill 290, 169 NE 214; Illinois Iowa Power Co. v. Rhein, 369 Ill 584, 17 NE2d 582; Forest Preserve Dist. v. Lehmann Estate, Inc., 388 Ill 416, 58 NE2d 538.

The plaintiff urges, however, that where the grounds of the objection are evident and the defect cannot be cured, a general objection is sufficient to preserve the question upon appeal. Although this is the rule in Illinois (Styblo v. McNeil, 317 Ill App 316, 45 NE2d 1011; McCabe v. Swift & Co., 143 Ill App 404; McCormick On Evidence, § 52, p 118) it is difficult to show that a particular defect cannot be cured or that the ground for objection is obvious. For example, the particular statement here in question, although de-

fective for the purpose of proving the truth of the assertions of Osbie Allison as to what happened in the liquor store, might have been admitted with an appropriate restrictive instruction for the purpose of corroborating that Osbie Allison and Arthur Johnson were together and having a conversation on that particular evening. Or, it could be possible as the trial court felt at the Post Trial Motions:

"I would agree with counsel that the statement to be taken from one defendant out of the presence of another is clearly inadmissible against the person who is not present. Nevertheless, this is not a case of where the statement is used for the purpose of showing the guilt of the particular individual, who is the plaintiff here, but rather, as counsel says, to show the conduct of the officers in the matter of an investigation which involved the placing in custody of several people at the place at that particular time."

Here, it seems that the defect could have been cured to admit the statement for some purpose or at some other time during the proceeding. We do not feel that the general objection made below was sufficient to alert either the court or defendants' counsel to the defect in order to bring about its correction or limitation.

In the lower court plaintiff sought to prove a causal connection in tort between an alleged false arrest and assault and battery and a subsequent alleged beating of the plaintiff. The testimony did not substantiate plaintiff's contention that the injury occurred in the liquor store.

█ Plaintiff's theory now is that the testimony of Officer Smith upon its face constituted the elements at law of a false arrest and "that the slightest touch-

ing of another, or his clothes, or cane or anything else attached to his person, if done in a rude, insolent or angry manner constitutes a battery for which the law affords redress." (Crosswhite v. Barnes, 139 Va 471, 477, 124 SE 242.) Plaintiff must concede that this particular theory would only apply to Officer Smith since the defendant Officer Jackson did not participate in the alleged false arrest, but only came into the picture to end the altercation which had developed between the plaintiff and Officer Smith. See Dilcher et al. v. Raap, 73 Ill 266. The trial court appreciated the thrust of plaintiff's motion, but, nevertheless, denied it saying that these things presented questions of fact.

The plaintiff has presented us upon appeal with the following dilemma. Officer Smith when asked whether he was arresting the plaintiff and Osbie Allison answered, "no." Yet from his own further testimony he proceeded to search Osbie Allison and "started" to search the plaintiff Arthur Johnson. It is plaintiff's theory that to question and to search without an intention to arrest constitutes a false arrest. Or, if there is no false arrest the mere touching of the plaintiff for the purpose of search while not acting under the cloak of the law constitutes at law an assault and battery.

Although certain statements made by Officer Smith could be interpreted as admissions that he assaulted Arthur Johnson by "padding him down," we are impressed that during the taking of evidence in the court below plaintiff's counsel never attempted to establish that Officer Smith touched Arthur Johnson for the purpose of showing an assault and battery by "padding" or never sought to establish that such alleged actions might have been done in a "rude, insolent or angry manner." Plaintiff at all times directed his line of questioning to establishing that Arthur Johnson was beaten about the face in the liquor store, presumably by Officer Jackson.

Officers DeNye and Walker offered no testimony showing that Officer Smith touched Arthur Johnson. The statements of Osbie Allison and Officer Jackson were ambiguous. Neither the plaintiff nor any of his witnesses testified that Officer Smith touched the plaintiff.

We agree with the lower court's position that these matters created questions of fact. Officer Smith was never asked whether he touched Arthur Johnson. The testimony "he started to search" is at best ambiguous. Whether Arthur Johnson pushed away Officer Smith's hand before he touched Arthur Johnson or whether the search was half completed when his hand was pushed away we don't know.

If we were to accept plaintiff's theory concerning the false arrest, a police officer would not be able to talk to anyone concerning illegal conduct while he was in uniform or if he identified himself as a police officer without carrying out a formal arrest. Taking the evidence most clearly favorable to Officer Smith, it appears that Osbie Allison and Arthur Johnson were using profane language in the presence of ladies. Officer Smith called this to their attention and stated that he wasn't arresting them. He then "padded" Osbie Allison and was pushed away by Arthur Johnson either before or after he touched him.

We think that the grounds for an arrest were present (disorderly conduct or disturbing the peace). False arrest consists in the unlawful restraint against his will of an individual's personal liberty or freedom of locomotion. See Shelton v. Barry, 328 Ill App 497, 66 NE2d 697. In order to obtain a directed verdict, plaintiff would have had to establish that Officer Smith attempted to "restrain" Arthur Johnson or intended to without cause. In Alvarez v. Reynolds, 35 Ill App2d 54, 181 NE2d 616, the court found that evidence of whether officers had reasonable grounds for believing

■■■■■■■■■

that plaintiff had committed crime in a false arrest suit was a question for the jury. For these reasons we feel that the court did not err in submitting these questions to the jury or in denying the motion for judgment notwithstanding the verdict.

■■ Plaintiff's last assignment of error is that his instructions 9, 11 and 14 were erroneously omitted. Modern tendency favors a liberal application of the harmless error doctrine to instructions when it appears the rights of the complaining party have in no way been prejudiced. Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205; Kavanaugh v. Washburn, 320 Ill App 250, 50 NE2d 761; Reivitz v. Chicago Rapid Transit Co., 327 Ill 207, 158 NE 380.

All of the instructions given by the trial court, those for plaintiff and those for defendant, should be considered together if, when so considered, they fairly state the law of the case, they are sufficient and omissions of one party's instructions may be cured by the instructions given by the other. See Meyer v. Williams, 15 Ill App2d 513, 146 NE2d 712; Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 146 NE2d 205.

There is no doubt that a plaintiff is entitled to be instructed on his theory of the case providing that it correctly states the law on the matter. Sims v. Chicago Transit Authority, 7 Ill App2d 21, 129 NE2d 23. Nor is there any merit to defendants' position that instructions which have previously been used and approved in criminal cases are not appropriate in civil proceedings.

We feel that the jury was adequately instructed on the law of the case when taken as a whole. Plaintiff's instruction number 14 was covered in plaintiff's instructions 7, 10 and 13. Plaintiff's instruction number 11 is no more than an unnecessary amplification of instruction number 10.

It appears that the court's only objection to plaintiff's instruction number 9 was that counsel for the defendants wished to introduce an instruction pertaining to the nature of false arrest. Plaintiff's counsel made no objections to this although he apparently would have been free to rephrase the instruction into terms of resisting an assault. Under the circumstances we do not feel that the denial of this instruction constituted reversible error. Supreme Court Rule 25–1(a) (Ill Rev Stats c 110, § 101.25–1(a)) provides: ". . . Whenever IPI does not contain an instruction on a subject on which the Court determines that the Jury should be instructed, the Instruction given on that subject should be simple, brief, impartial and free from argument." Rule 25–1(b) provides: ". . . Counsel may object at the conference on Instructions to any instruction prepared at the Court's direction, regardless of who prepared it, and the Court shall rule on these objections as well as objections to other instructions. The grounds of the objections shall be particularly specified." A question of error in denying an instruction cannot be preserved by a general objection.

We believe that substantial evidence supports the judgment of the lower court and that there was no reversible error. The judgment is affirmed.

Judgment affirmed.

BURKE, PJ and FRIEND, J, concur.